# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

KARITA MIDDLETON,
individually and on behalf of all
others similarly situated,

              Plaintiff,

    v.

TOTAL INSURANCE BROKERS,
LLC,

              Defendant.

CIVIL ACTION NO.
NO.: 8:21-cv-01259

## JOINT MOTION AND MEMORANDUM OF LAW FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

The Plaintiff, Karita Middleton ("Plaintiff" or "Class Representative") and Defendant, Total Insurance Brokers LLC ("TIB" or "Defendant") have entered into a Settlement Agreement that resolves the claims raised in this proceeding. The Parties hereby submit the FLSA Collective Action Settlement Agreement for approval by the Court, pursuant to Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982) and this Court's Order [D.E. 34]. By this Motion, the Parties respectfully submit that the Court should (i) conditionally certify this proceeding as a collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") for purposes of settlement only; (ii) grant approval of the Settlement Agreement as fair and reasonable; (iii) approve the notice to Class Members; and (iv) approve the provisions of Plaintiffs' attorneys' fees and costs.

1

## CASE SUMMARY AND BACKGROUND

On or about May 24, 2021, Plaintiff commenced this action by filing a Complaint in the United States District Court for the Middle District of Florida (the "Court"), captioned as: <u>Karita Middleton, individually and on behalf of all those similarly situated v. Total Insurance Brokers LLC,</u> Civil Action No. 8:21-cv-01259 (the "Civil Action").

The Complaint asserted a single cause of action stemming from allegations that Defendant violated the FLSA by failing to pay overtime compensation to Plaintiff and other similarly situated employees who were subject to an automatic lunch deduction [D.E. 1 ¶ 63]; and failing to include commissions and bonuses in the calculation of the overtime rate [D.E. 1 ¶ 64]. The Plaintiff also sought recovery of liquidated damages for all overtime wages owed as part of the legal claim.

Plaintiff Middleton was joined by fourteen (14) Opt-In Plaintiffs who filed their consent to join this case[1]. "The plain language of [29 U.S.C. § 216(b)] supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required.." <u>Jenkins v. SDI Fla. LLC</u> (M.D. Fla. 2018) *citing* <u>Mickles v. Country Club Inc.</u>, 887 F.3d 1270, 1278

---

[1] Mathew Garapic [D.E. 11-1]; Amanda Davis [D.E. 12-1]; Gabrielle Lackey [D.E. 12-2]; Denise Fowlkes [D.E. 12-3]; Lenise Williams [D.E. 13-1]; Shaquita Lester [D.E. 13-2]; Brian Stewart [D.E. 14-1]; Maurice Beckford [D.E. 14-2]; Shane Fletcher [D.E. 15-1]; Ella Blaisdell [D.E. 16-1]; Celine Chavez [D.E. 16-2]; Edward Martin [D.E. 18-1]; Desiree Gomez [D.E. 21-1]; and Sherlyo Montalvo [D.E. 22-1]

(11th Cir. 2018). Plaintiff Middleton together with the Opt-In Plaintiffs are herein referred to as 'Party Plaintiffs.'

The Party Plaintiffs were former employees of TIB working as inside sales representatives under the job title of 'sales agent'. The Party Plaintiffs and all sales agents were non-exempt, hourly employees eligible to earn monthly and quarterly bonuses.

On August 23, 2021, the Parties moved to stay the case pending mediation [D.E. 26]. The Parties then began settlement discussions and engaged in a thorough exchange of information to facilitate a negotiated resolution. TIB assembled and produced payroll and time entry data of over 900 employees to the Plaintiffs, who along with their counsel, conducted an independent review of this data. This voluminous electronic data amounted to the equivalent of hundreds of thousands of pages of documents.

After reviewing the payroll and time entry records, Plaintiff's Counsel determined that the alleged automatic lunch deduction did not materially affect the Party Plaintiffs as the time entry records did reflect non-automatic lunch deductions. Plaintiff's Counsel confirmed that overtime true-up calculations were made and paid, albeit untimely such that the Party Plaintiffs were entitled to liquidated damages.

On October 29, 2021, the Parties conducted an all-day mediation before experienced FLSA mediator Mark Hanley. On October 29, 2021 the Parties reached a tentative agreement and continued negotiating the final material terms of the settlement thereafter. On November 12, 2021, the Parties ultimately reached a settlement to resolve the Party Plaintiffs' claims and the claims of other similarly situated sales agents on a class-wide basis from May 24, 2019 through October 29, 2021 (the "Eligible Period"). The terms and conditions of this settlement are set forth in the FLSA Collective Action Settlement Agreement and Release, attached hereto as **Exhibit 1** (the "FLSA Settlement Agreement").

Although not reviewable pursuant to *Lynn's Food*[2], for the purposes of full transparency, the Parties also advise the Court that they also reached a settlement of Plaintiff Middleton's non-FLSA related claims and counterclaims[3]. As discussed in greater detail *infra*, TIB and Plaintiff negotiated a general release agreement separate and apart from the FLSA Settlement Agreement, and the Parties agree that it is for good and valuable consideration separate and apart from Middleton's FLSA claims. The terms and conditions of this settlement are set forth in the General Release Agreement, attached hereto as **Exhibit 5** (the "General Release Agreement").

---

[2] "[N]on-FLSA claim...that does not require court approval for settlement, the same concerns do not warrant disapproving the settlement or striking those provisions." Shealy et. al. v. C&S Medial Supply Inc. No. 3:19-cv-00718-BJD-PDB (M.D. Fla. Nov. 12, 2019) *citing* Buntin v. Square Foot Mgmt. Co. No. 6:14-cv-1394-Orl-37GJK, 2015 WL 3407866, at *2-3 (M.D. Fla. May 27, 2015)

[3] Plaintiff Middleton asserted State Law claims of wrongful termination; and TIB asserted counterclaims against Plaintiff Middleton for harassment.

The Parties now ask this Court to approve the FLSA Settlement Agreement as follows.

## CLASS DEFINITION

For settlement purposes only, the Parties agree that the Party Plaintiffs, and the Collective Members (as defined below) are similarly situated for purposes of 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and consent to Court-facilitated notice to Party Plaintiffs, and Collective Members. "Collective Members" shall include all non-exempt employees who received a bonus or commission between May 24, 2019 and the date of execution of this Agreement (the "FLSA Covered Period") who received an allegedly delayed overtime true-up payment.

## SETTLEMENT TERMS

The parties have agreed to monetarily resolve the Civil Action asserted for a Total Settlement Amount of three hundred and forty-two thousand, dollars ($342,000.00). The Total Settlement Amount is comprised of liquidated damages for Party Plaintiffs' untimely overtime true-up payments ($13,254.05)[4]; liquidated damages for Collective Members' untimely overtime true-up payments

---

[4] This amount reflects the 100% of the actual liquidated damages owed to Party Plaintiffs for untimely overtime true-up payments.

($223,245.95); attorneys' fees ($105,000.00); litigation costs ($500.00); and costs of administration of the settlement funds to the Collective Members.

The liquidated damages for the Collective Members is based on the Parties' estimation of potential liquidated damages owed to Collective Members for untimely overtime true-up payments reflected in TIB's payroll records during the applicable Eligible Period. For the applicable Eligible Period from May 24, 2019, through October 29, 2021, the Parties estimated the potential liquidated damages for 900+ potential Collective Members.

Of the 900+ potential Collective Members, only 581 (64.5%) had either a bonus payment or overtime wages paid during the Eligible Period such that an overtime true-up payment may be required[5]. Of the Collective Members, only 430 (47.7%) were eligible for an overtime true-up payment of $100.00 or more. Of the Collective Members, only 106 (11.7%) were eligible for an overtime true-up payment of $1,000.00 or more. Accordingly, the $223,245.95 estimated payment to the Collective Members is fair and reasonable.

The Party Plaintiffs, by opting into this matter, shall be entitled to their identified, unpaid liquidated damages. The Collective Members shall be entitled to their pro-rata portion of the liquidated damages set aside for Collective Members if they endorse the Consent to Join and Release and/or otherwise negotiate or deposit

---

[5] *See* 29 C.F.R. §778.117

the Settlement Check upon which the Consent to Join and Release Form is printed. *See* the Notice Packet set forth in **Exhibit 2** (the "Notice Packet") providing both the Notice of Collective Member's Rights, and a Settlement Check to endorse the Collective Member's Consent to Join and Release of Claims.

The Party Plaintiffs and those Collective Members who endorse or deposit the consent to join settlement checks will be bound by a limited release of all their overtime-related claims for their applicable Eligible Period. Those Collective Members who choose **not** to endorse or deposit the consent to join settlement checks will not be paid pursuant to this settlement and shall retain all rights and claims available to them, if any.

## SETTLEMENT ADMINISTRATION

Subject to this Court's approval, the Parties have selected [THIS WILL BE RUST] to act as Settlement Administrator in the present case. The Parties agree that the Settlement Administrator shall act as the agent for Defendant in holding and disbursing funds from the Total Settlement Amount. The administrative costs associated with the Settlement will be paid as part of Collective Members' settlement funds.

The Settlement Administrator will be responsible for calculating the pro-rata share of the Collective Member's settlement amounts; disseminating the Notice of Settlement to Collective Members and Party Plaintiffs; distribution of attorneys' fees

and costs; distribution of payments to Party Plaintiffs and Participating Collective Members; calculating the employee share of payroll tax withholdings and payment of such withholdings to the appropriate taxing authorities, if any; calculating the employer's share of payroll tax liability, if any; and all tax reporting related to the settlement payments.

Within ten (10) days of the Court's approval of the FLSA Settlement Agreement, TIB shall provide the Settlement Administrator an Excel chart listing each Party Plaintiff and Collective Member's name, employee identification number, last known addresses, last known telephone number, last known e-mail address, Social Security number, dates of employment in the position defined by the class definition held during the FLSA Covered Period, and states of employment of each during the time periods that they worked in the class covered position for TIB, as that information exists in TIB's electronic employment records for Party Plaintiffs, and Collective Members. Prior to the mailing of the Notice Packet to the Party Plaintiffs and Collective Members, the Settlement Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database and shall mail the Notice and Settlement Check to any updated address obtained therefrom. Additionally, within twenty (20) days of the Court's approval of this Agreement, the Settlement Administrator shall provide Plaintiff's Counsel with an Excel chart listing each Party Plaintiff's and

Collective Member's employee identification numbers and the amounts allocated to them under this Settlement. At the same time, the Settlement Administrator shall provide TIB the total amount needed to fund the Total Settlement Amount into a Qualified Settlement Fund, inclusive of the estimated share of employer payroll taxes, if any.

Within fifteen (15) days of payment of funds to the Qualified Settlement Fund, the Settlement Administrator shall send via First Class U.S. Mail all Notice Packets to the Party Plaintiffs and Collective Members. If any Notice Packet is returned as undeliverable for a Party Plaintiff or a Collective Member, the Settlement Administrator shall promptly attempt to locate such person one time through an electronic search using the Social Security number and/or former address of that person and shall promptly mail an additional Notice Packet to such person. In order for any Collective Member to opt into and participate in this Settlement, they must simply endorse the Consent to Join and Release and/or otherwise negotiate the Settlement Check upon which the Consent to Join and Release Form is printed within 120 days from the date on which the Notice Packet was issued ("Claim Bar Date").

In the event that, before the Claim Bar Date, Plaintiff's Counsel or the Settlement Claims Administrator becomes aware that a Party Plaintiff or Collective Member did not receive the Notice Packet or misplaced the Notice Packet, the

Settlement Administrator will mail an additional Notice Packet to the Party Plaintiff or Collective Member. To the extent any mailed Notice Packet was not received by a Party Plaintiffs or a Collective Member and/or is returned as undeliverable within the 120-day Claim Bar Date, such person shall be permitted the longer of thirty (30) days from the re-mailing of the Notice Packet or the Claim Bar Date to participate in the Settlement ("Re-mailing Claim Bar Date").

Sixty (60) days after the distribution of the Notice Packets, the Settlement Administrator shall send out reminder postcards via e-mail (where personal e-mail addresses are available in TIB's records) and First Class U.S. Mail to the Party Plaintiff and/or Collective Member who have not yet opted into the settlement, reminding them of the Claim Bar Date.

In the event of any dispute over a Collective Member's dates of employment, the Settling Parties will meet and confer in good faith in an effort to resolve the dispute, and if the Settling Parties are unable to reach an agreement, the Settlement Administrator shall decide the dispute, and its decision will be final; however, to the extent a claim is submitted late for which there is a good faith explanation to support the untimely submission, it will be presumed that the Settlement Administrator will accept same. In the case of a dispute over a Party Plaintiff's or Collective Member's dates of employment, TIB's records shall control and will have a rebuttable presumption of correctness.

Party Plaintiffs and Collective Members who timely return completed and executed Consent to Join and Release Forms will be considered "Qualified Claimants."

Within seven (7) days after the close of the later of the Claim Bar Date or any open Re-mailing Claim Bar Dates, the Settlement Claims Administrator shall provide to TIB's Counsel and Plaintiff's Counsel a list of Qualified Claimants, including all of their contact information as it exists in the Settlement Administrator's possession, and shall provide electronic copies of all timely received and completed Consent to Join and Release Forms with confidential, sensitive information redacted.

At the conclusion of the settlement administration process, the Settlement Administrator shall also provide the Settling Parties a register listing all Qualified Claimants and the payment amount made to each Qualified Claimant.

## MEMORANDUM OF LAW

## THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS

### A. The Settlement Meets the Requirements Set Forth in Lynn's Food Stores, Inc.

As the Eleventh Circuit explained in <u>Lynn's Food Stores, Inc. v. United States,</u> in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present

any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing the FLSA Settlement Agreement, this Court will find that the Parties' FLSA Settlement Agreement is fair, reasonable and should be approved. The Stipulation resolves a bona fide dispute between the Parties with respect to whether the employees at issue are entitled to liquidated damages for overtime true-up payments that were allegedly paid late.

Furthermore, the Plaintiffs were represented by experienced wage & hour counsel, who in the "adversarial context of a lawsuit," negotiated a "reasonable compromise of disputed issues." on behalf of the Plaintiffs. *See id.* at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong

presumption" in favor of approval. *See* <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1331 (5th Cir. 1977); <u>Lynn's Food Stores</u>, 679 F.2d at 1353.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> *Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*
>
> *Lynn's Food Stores,* 679 F.2d at 1354.

Before approving a FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id*. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether the settlement is internally fair and reasonable, the Court should consider the following factors:

A.     the existence of fraud or collusion behind the settlement;

B.     the complexity, expense, and likely duration of the litigation;

C.     the stage of the proceedings and the amount of discovery completed;

D.     the probability of plaintiff's success on the merits;

E.     the range of possible recovery, and

F.     the opinions of the counsel.

*See* Leverso v. South Trust Bank of Ala., Nat. Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)[6]

## B. The Settlement Was the Result of Arm's Length Negotiations Free From Collusion

The FLSA Settlement Agreement was reached as a result of hard-fought, adversarial, arm's length negotiations that have taken place over litigation that has been ongoing for almost six months. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. Pickett v. IBP, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001). Here the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion. The Parties were able to settle this action only after they engaged in significant informal discovery. *See* Diaz v. Hillsborough County Hos. Authority,2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting* Cotton, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own

---

[6] *See also* Dees v. Hydradry, Inc., 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); Hamilton v. Frito-Lay, Inc., 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also* Hill v. Florida Indus. Elec., Inc., No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); Pacheco v. JHM Enters., Inc., et al., 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. Hamilton, 2007 U.S. Dist. LEXIS at * 2-3; *see also* Cotton v. Hinton. 559 F.2d 1326, 1331 (5th Cir. 1977).

judgment for that of counsel").  Moreover, Plaintiffs desired resolution in lieu of continued, protracted litigation, time commitments and having to commit to attending a trial.  The Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' Counsel believe that on inspection, this Court will join the Parties in concluding that the proposed FLSA Settlement Agreement is fair, reasonable and worthy of approval.  It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a bona fide dispute with respect to liability [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Lynn's Foods*, 679 F.2d at 1353-54.   Here, the Party Plaintiffs are each receiving payment of liquidated damages for the untimely payment of overtime true-up payments without having to prove anything to a jury.   Each Collective Member likewise is eligible to receive their pro rata share of liquidated damages based upon the untimely overtime true-up payments made to each member. Moreover, Collective Members are not bound by the FLSA Settlement Agreement. Collective Members are free to cash their settlement checks if they choose; but

Collective Members are also free to reject the settlement and retain their rights to sue TIB on their own.

### C. The Complexity, Expense and Duration of Litigation

The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed in May 2021, and settlement was preceded by almost six months of informal discovery. During the pendency of the case, the Parties engaged in voluminous informal discovery, including exchanging thousands of pages of personnel files, time records, payroll records and other supporting documents and declarations. This matter was ultimately resolved only after the parties engaged in extensive research and analysis and arms-length negotiations. Moreover, and equally important is the fact that Defendants had not made any bona fide offer to settle the Plaintiffs wages claims until mediation.

If the Parties continued to litigate this matter, they would be forced to engage in costly and protracted discovery and litigation. If it proceeded to trial, there would be significant questions of fact and damages to present the claims and defenses regarding whether Plaintiffs were paid overtime true-up payments, and if they were made timely. To prove their claims, Plaintiffs would incur extensive costs involving depositions and other discovery costs and the Parties would likely require one or more experts related to the underlying claims and/or defenses.

Thus, settlement is a reasonable means for both Parties to minimize their future risks and litigation costs, which could reach over $1MM in attorneys' fees and costs alone by the time the case proceeded to a jury trial. Additionally, after careful review of the records and discussions with counsel, the Plaintiffs believe they are receiving a fair and reasonable amount of damages/wages and do not wish to continue with costly, risky litigation without any real potential to recover additional sums. Plaintiffs' Counsel likewise believe the resolution is fair and reasonable, especially when taking into account the risks, burdens of proof and the records produced to date. Plaintiffs also carry the risk of having to pay Defendant's cost and expenses if they do not prevail at trial - risks that the Party Plaintiffs naturally wish to mitigate and avoid.

### D. The Stage of Proceedings at Which the Settlement Was Achieved.

The Parties reached settlement after more than six months of litigation. Counsel for the Parties spent significant time and effort advocating legal theories, exchanging discovery and modeling the potential damages at issue in this case. The Parties exchanged documents, damage calculations, compensation information, and engaged in detailed evaluation of Defendants compensation practices for Plaintiffs. There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged records, information, data and representations regarding the claims and defenses in this

matter. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### E. The Likelihood of Success at Trial.

The core bona fide FLSA dispute in this case relates to whether Plaintiffs were paid the proper overtime compensation when they earned commissions and/or bonuses; whether the overtime compensation 'true-up' was paid; whether any overtime compensation 'true-up' was properly calculated; whether any overtime compensation 'true-up' was paid timely; AND whether liquidated damages are appropriate.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. First, Plaintiffs would face a risk at trial of not prevailing on their wage claims because they would have to establish that they in fact worked overtime hours without adequate overtime 'true-up' compensation. At trial, Defendants would have claimed that (i) TIB implements lawful timekeeping policies; (ii) TIB accurately and properly paid Plaintiffs bonuses and commissions including overtime 'true-up' payments; and (iii) TIB paid overtime 'true-up' payments timely in accord with the FLSA and that it acted in both objective and subjective good faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

If the case were tried, the trier of fact would have been presented with a case where TIB would have argued that it maintained compliance with the FLSA, and Plaintiffs would bear the burden of proving that they did not receive full and adequate compensation for overtime 'true-up' payments within the time prescribed by the FLSA.

Second, Plaintiffs would have to establish the amount of overtime 'true-up' payments owed, if and when those true-up payments were made; and if they were paid timely within the FLSA. If the case were tried, TIB would have the opportunity to establish that the true-up payments were made; and that they were paid timely within the FLSA which could have substantially, or significantly reduced Plaintiffs' damages. Furthermore, if Defendant's prevailed on their good faith defense, liquidated damages would not be awarded, and Plaintiffs' damages would be reduced to zero.

Despite diligent investigation and research, it remains a highly uncertain question of fact of how much true-up payments were owed, when they were paid and whether or not liquidated damages are appropriate in this matter. In consideration of the close factual issues raised, and the significant costs of litigation required to build a litigation record sufficient to prove the claims or defenses, the Parties reasonably chose to compromise the bona fide dispute. Party Plaintiffs have always sought a compromise of the claims, and when such an opportunity arose, they chose to pursue

resolution and compromise. It would seem illogical to force any plaintiff to risk going all the way to trial simply to gamble on whether a jury would agree with him/her about their alleged unpaid overtime true-ups, while also carrying the risk of having to pay Defendant, thousands of dollars in costs and expenses if they did not prevail on their claims.

Like all disputed claims and lawsuits, there is a real possibility that Party Plaintiffs and Collective Members would recover $0, and worse, may have to pay the other side thousands of dollars in litigation costs. Ultimately, the Parties agreed to an amount of $342,000.00 representing a reasonable compromise of the Plaintiffs' FLSA claims in which each Party Plaintiff is paid their liquidated damages; and the Collective Members receive their pro-rata share of the liquidated damages.

## F. MIDDLETON'S GENERAL RELEASE AGREEMENT

For purposes of full transparency to the Court, the Parties advise the Court of a General Release Agreement between Plaintiff Middleton and TIB to resolve all other non-FLSA claims. "A general release is generally disfavored in the context of a FLSA settlement, because it is viewed as affecting the fairness and reasonableness of the settlement...[h]owever, courts will approve an FLSA settlement that contains a general release where the plaintiff is paid separate consideration for the provision." Sanchez v. La Cantina Cocina Mexicana, No. 6:21-cv-00337-JA-EJK, 2021 U.S. Dist. LEXIS 168168, at *7-9 (M.D. Fla. Sep. 3, 2021) *citing* Bravo v. Ross Dress

for Less Inc., No. 618CV2210ORL28LRH, 2019 U.S. Dist. LEXIS 126843, 2019 WL 3387003, at *4 (M.D. Fla. May 23, 2019).

The General Release Agreement between Plaintiff Middleton and TIB, resolves all of Plaintiff Middleton's non-FLSA claims, including but not limited to claims for alleged unlawful termination and unpaid commissions. Plaintiff Middleton is receiving $8,000.00 as separate consideration for executing the General Release Agreement and thereby resolving her non-FLSA claims. This amount was negotiated separately and apart from the FLSA Settlement.

Moreover, Plaintiff Middleton is obtaining the full value of her FLSA claims for late paid true-ups ($1,626.04). This is based upon actual payroll records establishing that TIB did pay this amount of overtime true-up, albeit untimely. Accordingly, this sum represents 100% of the liquidated damages owed to Plaintiff Middleton or full payment for Plaintiff Middleton's claims under the FLSA.

Because Plaintiff Middleton is obtaining the full value of her FLSA claims, and because the General Release Agreement provides for material, separate consideration related to her non-FLSA claim; the General Release Agreement does not affect the fairness or reasonableness of the FLSA class-wide settlement. *See* Reyes v. Fresenius Med. Care Holdings, Inc., No. 6:20-cv-706-PGB-LRH, 2021 U.S. Dist. LEXIS 160210, at *17-18 (M.D. Fla. Aug. 24, 2021); Torres v. Cubesmart

*Mgmt., LLC*, No. 3:20-cv-1137-TJC-PDB, 2021 U.S. Dist. LEXIS 111835 (M.D. Fla. May 18, 2021)

Accordingly, this Court should find that the General Release Agreement does not affect the fairness or reasonableness of the FLSA class-wide settlement and should not preclude approval of the FLSA Settlement Agreement. Further, the FLSA Settlement Agreement is not contingent upon the Court approving the General Release Agreement.

**G. The Court Should Approve the Negotiated and Stipulated Attorneys Fees and Costs Pursuant to the Settlement Agreement.**

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees. *See* Helms v. Central Fla. Reg. Hosp., 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 849-50 (5th Cir. 1998). Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." Bonetti v. Embarq Mgmt. Co., 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the FLSA Settlement Agreement provides for the Defendants to pay Plaintiffs' hourly incurred attorneys' fees and costs as part of the resolution of Plaintiffs' claims in the amount of $105,500.00 in fees and costs, which includes $500.00 in taxable costs consisting of filing fees, and process service charges plaintiff's counsel incurred.

The Parties stipulate that Plaintiffs' attorneys' fees and costs to be paid by the Defendant was separately negotiated apart from the sums agreed to be paid for the FLSA claims. The Parties further stipulate that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances.

Over the past 6+ months, before and after the complaint was filed, Plaintiffs' counsel spent a significant amount of time in the case preparing the pleadings, reviewing thousands of documents, preparing damages models, analyzing records, researching applicable issues, engaging in informal discovery, and ultimately engaging in a mediation with Defendant's counsel that ultimately resulted in this settlement. Further, at every step of the litigation, Plaintiffs' counsel was required to communicate with numerous Plaintiffs further increasing the number of hours expended in this matter.

Plaintiffs' Counsel, Mitchell L. Feldman, Benjamin L. Williams and Jason Quintus spent a combined 330.7 hours litigating this case. Both Feldman and Williams have previously been awarded a lodestar fee of $400.00 per hour. *See*

<u>Ganier v. Ramsgate Insurance Inc. et. al.</u>, Case No. 8:17-cv- 2463-T-26MAP, M.D. Fla. January 29, 2018 [D.E. 24] (awarding Feldman and Williams an hourly fee of $400.00 per hour) *See* Ex. 3 – Declaration of Benjamin Williams and Ex. 4 – Declaration of Mitchell Feldman.

| Timekeeper | # Hours | Hourly Rate | Total |
|---|---|---|---|
| Mitchell Feldman | 95 | $415.00 | $39,425.00 |
| Jason Quintus | 116 | $350.00 | $40,600.00 |
| Benjamin Williams | 119.7 | $400.00 | $47,880.00 |
| | | **Total Attny's Fees** | **$127,905.00** |

Accordingly, the $105,000.00. in attorneys' fees provided for in the FLSA Settlement Agreement is a significant reduction from the potential lodestar fee of $127,905.00. But through separate negotiations with Defendants, the Parties reached a compromise as to the sum of attorneys' fees and costs to be paid by the Defendants without regard to the amount paid to Plaintiffs.

The attorneys' fees and costs are intrinsically fair and reasonable. The attorneys' fees average just $174.00 per each affected Party Plaintiff and Collective Member. Further, the fact that Plaintiffs' counsel agreed to a reduced attorneys' fee provision demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

Plaintiffs' Counsel's attorneys' fees and costs are reasonable in light of the fact that the total of $236,500.00 damages in settlement of the sales agents' claims

were obtained in spite of Defendants' vigorous defenses that Plaintiffs' were not owed liquidated damages for true-up payments that were made timely.

This settlement was achieved only by and through Plaintiffs' counsel's ability to persuade Defendants that Plaintiffs' claims had merit and that Defendants faced the very real risks of having to pay more than this sum in liquidated damages, as well as incurring attorney's fees which would have eclipsed the entire amount of the settlement if they continued to litigate. This case settled after 6+ months of litigation. Thus, it is appropriate that Plaintiffs' counsel be fairly and reasonably compensated for performing these necessary legal services. Defendants stipulated that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances, and Plaintiffs have also agreed to accept the reduced amount of attorneys' fees from their respective lodestars for the purpose of ending this litigation and obtaining a settlement that Plaintiffs desired.

All the above factors warrant that the $105,500.00 stipulated to be paid to Plaintiffs' counsel for reimbursement of incurred attorneys' fees and costs are fair and reasonable under all the facts and circumstances, and as to which the Court should approve. This compromised sum moreover is fair on its face given all the above information.

## CONCLUSION

The Parties voluntarily agreed to the terms of the FLSA Settlement Agreement. All Parties were counseled and represented by their respective experienced attorneys throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this Court approve the terms of the Settlement Agreement, enter a stipulated judgment in favor of the Plaintiffs in the amounts agreed upon, including the amount agreed to be paid in attorney's fees and costs. The Parties request this Court to reserve jurisdiction to enforce the terms of this FLSA Settlement Agreement through the latter of the Claim Bar Date or the Re-mailing Claim Bar Date, to supervise the payments to the Party Plaintiffs and the Collective Members and enter an Order in the form of the Parties' Proposed Order attached hereto as **Exhibit 6** (the "Proposed Order").

Respectfully submitted on this 15th day of November, 2021

**FELDMAN LEGAL GROUP**

s/*Mitchell Feldman*
Mitchell Feldman, Esq.
Florida Bar No. 0080349
mf@feldmanlegal.us
6916 W. Linebaugh Ave #101
Tampa, Florida 33625
Telephone: (813) 639-9366
Facsimile: (813) 639 -9376
**Attorneys for Plaintiffs**

**WILLIAMS LAW P.A.**

/s/ Benjamin L. Williams
Benjamin Lee Williams, Esq.
Florida Bar No. 0030657
464 Sturdivant Avenue
Atlantic Beach, FL 32233
(t) (904) 580-6060
(f) (904) 671-9483
bwilliams@williamslawjax.com
**Co-Counsel for Plaintiffs**

**O**GLETREE, DEAKINS, NASH,
**SMOAK & STEWART, P.C.**

*s/ Jennifer M. Moore*
Jennifer M. Moore, Esq.
Jennifer M. Moore; FBN: 35602
Christopher M. Cascino; FBN: 1022861
Lara J. Peppard; FBN: 520055
100 North Tampa Street, Suite 3600
Tampa, FL 33602
Phone: 813.221.7239;
Fax: 813.289.6530
jennifer.moore@ogletreedeakins.com
chris.cascino@ogletreedeakins.com
lara.peppard@ogletree.com

**Attorneys for Defendant**